### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAUREEN E. DUNHAM and FRANK NOVAK,<br><br>     Plaintiffs,<br><br>v.<br><br>THE SHERWIN-WILLIAMS COMPANY,<br><br>     Defendant. | Civil Case No. 1:22-CV-300 (DNH/DJS)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs MAUREEN E. DUNHAM and FRANK NOVAK, on behalf of themselves and all others similarly situated, complain and allege upon information and belief based, among other things, upon the investigation made by Plaintiffs and through their attorneys as follows:

### NATURE OF ACTION

1.   This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant, The Sherwin-Williams Company ("Sherwin-Williams" or "Defendant"), arising from its deceptive bait-and-switch scheme of covertly tacking on a hidden 4% Supply Chain Surcharge (the "Surcharge") to every sale transaction at the cash register once it's often too late for the customer to rescind their purchase. Sherwin-Williams adds the Surcharge covertly, and customers are often entirely unaware of the Surcharge until after paying and checking out.

2.   In the wake of the COVID-19 pandemic, supply chain shortages increased throughout the nation for raw materials, such as paint. Feeling the pressure of rapidly rising manufacturing costs, Sherwin-Williams decided to shift this cost onto customers. But instead of raising its list prices in a transparent manner, Sherwin-Williams chose to add the Surcharge on to sales *after* the customer has decided to make a purchase.

3.     This deceptive practice allows Sherwin-Williams to hide the true prices of its products.  Customers are induced to make purchases in reliance on the lower listed price and then are duped at the cash register into paying 4% more than the prices advertised by Defendant.

4.     Sherwin-Williams's conduct is deceptive and illegal, as it obstructs customers' ability to engage in fair and accurate price comparisons in the marketplace and to shop around for the best value for their money.

5.     Defendant systematically fails to provide adequate notice to its customers of the Surcharge. By failing to adequately disclose to customers that the Surcharge will be added to every item purchased at Sherwin-Williams, Defendant deceives customers into making purchases that they otherwise would not make.

6.     Moreover, Sherwin-Williams misrepresents the actual cost of the items offered for sale by advertising that the actual price of every item is 4% lower than what it actually is.

7.     Specifically, Sherwin-Williams omits and conceals material facts about the Surcharge, never sufficiently informing customers at any time prior to the final point of sale, that the cost of their purchases will be higher than advertised.

8.     Thousands (if not more) of Sherwin-Williams customers like Plaintiffs have been assessed hidden Surcharges that they did not bargain for.

9.     Plaintiffs seek damages and, among other remedies, injunctive relief that fairly allows customers to decide whether they will pay Sherwin-Williams' Surcharge.

**PARTIES**

10.     Plaintiff Maureen E. Dunham is a citizen of the State of New York who resides in Amsterdam, New York.

11.     Plaintiff Frank Novak is a citizen of the State of Michigan who resides in

Farmington Hills, Michigan.

12.    Defendant Sherwin-Williams is incorporated in Ohio and maintains its principal business offices in Cleveland, Ohio.  Defendant regularly conducts business in the Northern District of New York by operating at least twenty Sherwin-Williams stores located throughout upstate New York.

<u>**JURISDICTION AND VENUE**</u>

13.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because of the following: (1) the proposed class is comprised of at least 100 members; (2) Plaintiffs are citizens of New York and Michigan, making at least one member of the proposed class a citizen of a different state than Defendant; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

14.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Sherwin-Williams is subject to personal jurisdiction here and regularly conducts business in this district.  Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this district.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

**A.    Supply Chain Shortages Strain the Economy in the Wake of the Pandemic**

15.    The COVID-19 pandemic disrupted global production across all industries—from food products to chemicals, from electronics to clothing.  The wide array of consumer products once readily available for immediate purchase have now been held up through all aspects of the supply chain—the manufacture of raw materials, transportation, and logistics.  As a result,

customers are forced to wait months to attain ordinary, household products.[1]

16.     The Better Business Bureau reports that the interruption in the supply chain of events was spurred by worldwide government shutdowns, which halted production of goods and resulted in heaps of laid-off employees.[2]

17.     As travel restrictions prohibited access to most countries throughout the world, many Americans chose to redirect their usual spending from travel and entertainment to improvement of their homes by renovating work-from-home offices and creating in-home gyms.[3] The influx in demand for these types of consumer products, further encouraged by government stimulus programs, ultimately swamped the system.

18.     The exponential jump in volume of ordered goods clogged shipping ports, leading to massive delivery delays of inventory to re-stock retailers' shelves.[4]

19.     As a result of the widespread scarcity of consumer goods and underlying raw materials, cost spiked for retailers.  As explained by the Los Angeles Times, some corporations, like Sherwin-Williams, have refused to shoulder this increased cost burden and instead, have

---

[1] *How the Supply Chain Broke, and Why It Won't Be Fixed Anytime Soon,* The New York Times, October 22, 2021, located at https://www.nytimes.com/2021/10/22/business/shortages-supply-chain.html, last accessed March 4, 2022.

[2] *BBB Tip: Supply chain challenges—coping strategies for consumers and businesses,* Better Business Bureau, February 25, 2022, located at https://www.bbb.org/article/news-releases/26584-supply-chain-challenges-coping-strategies-for-consumers-and-businesses, last accessed March 4, 2022.

[3] *How the Supply Chain Broke, and Why It Won't Be Fixed Anytime Soon,* The New York Times, October 22, 2021, located at https://www.nytimes.com/2021/10/22/business/shortages-supply-chain.html, last accessed March 4, 2022.

[4] *How American Shoppers Broke the Supply Chain,* TIME, November 2, 2021, located at https://time.com/6112491/supply-chain-shopping/, last accessed March 4, 2022.

passed on price increases for consumers to bear.[5]

20.     But as explained below, Sherwin-Williams fails to recoup this increased cost fairly and does so at the expense of unsuspecting consumers.

21.     Indeed, although these supply chain disruptions were affecting companies across all lines of business, most companies did not react by surreptitiously passing the costs to their customers through a hidden Surcharge like Sherwin-Williams did. Rather, most companies chose to engage in transparent pricing by raising the prices of individual items for sale so that the customer is fairly apprised of the actual cost of each item *before* deciding to make a purchase.

**B.     Sherwin-Williams Omits and Conceals Material Facts About the Total Cost of Purchases by Deceptively Tacking on a Surcharge to All Items**

22.     On September 28, 2021, Sherwin-Williams's Chairman, President, and Chief Executive Officer, John G. Morikis, made a public statement to its investors that manufacturing costs were rising due to the limited availability of raw materials.[6]

23.     As a result, instead of raising the prices of its individual items for sale, Defendant began tacking on a 4% Surcharge to all items purchased by customers at each of their Sherwin-Williams stores across the country.

24.     This practice allows Sherwin-Williams to play fast and loose with pricing by

---

[5] *Column: Supply-chain surcharge? Sherwin-Williams is latest company to add a sneaky fee,* Los Angeles Times, October 14, 2021, located at https://www.latimes.com/business/story/2021-10-14/column-pandemic-paint-surcharge, last accessed March 4, 2022.

[6] *Despite Strong Demand, Sherwin-Williams Lowers Third Quarter and Full Year 2021 Sales and Earnings Expectations Amid Escalating Raw Material Availability Challenges and Inflation Headwinds; Announces Agreement to Expand Internal Resin Manufacturing Capabilities,* Sherwin-Williams,       September       28,       2021,       available       at       https://investors.sherwin-williams.com/press-releases/press-release-details/2021/Despite-Strong-Demand-Sherwin-Williams-Lowers-Third-Quarter-and-Full-Year-2021-Sales-and-Earnings-Expectations-Amid-Escalating-Raw-Material-Availability-Challenges-and-Inflation-Headwinds/default.aspx,       last accessed March 4, 2022.

advertising normal prices to customers to induce the sale, and then jacking up customers' cost by 4% at the register, at the point in time when customers are less likely to cancel their transactions.

25.     Customers shop around for goods by engaging in price comparisons based upon the prices represented on item price tags and/or pricing placards and rely upon those represented prices when deciding what and from where to buy.

26.     By furtively adding a hidden Surcharge onto each item offered for sale in its stores, Sherwin-Williams unfairly obscures the true price of each item.

27.     Customers reasonably believe that they are purchasing items at the normal list price that Defendant has advertised, but in reality, they end up paying 4% more for each item at the cash register.

28.     On the bottom of the Sherwin-Williams purchase receipt that customers receive only after paying for their items and finalizing their purchase transactions, Defendant states that "a 4% Supply Chain Surcharge has been added to all applicable items purchased."

29.     This disclosure fails to provide an adequate advance warning to customers that a Surcharge will be imposed on their purchases.

30.     Moreover, attempting to notify customers of the Surcharge at the checkout counter is an insufficient location to inform them because it is often *after* customers have already paid for the items and completed their transactions.

31.     This is especially true for customers who purchase paint from Sherwin-Williams, as many consumers routinely do from Defendant's stores.  Custom orders like paint cannot be returned once mixed and thus, the customer is stuck buying the paint even before visiting the cash register.  Thus, even if Defendant informed customers of the Surcharge at the cash register, it is inadequate notice.

32.     Defendant applies its Surcharge in a deceptive and misleading manner, fails to adequately inform customers, and misrepresents the true cost of customers' items as being 4% less than what they will ultimately pay.  And the 4% Surcharge is added to customers' bills above the line to which sales taxes are multiplied, further increasing the costs to customers.

C.     **Plaintiffs' Experiences**

33.     Plaintiff Maureen Dunham made a purchase at a Sherwin-Williams store located in Amsterdam, New York on November 9, 2021, in the total amount of $119.59.

34.     Ms. Dunham purchased two gallons of paint and was assessed a 4% Surcharge for each gallon, in the total amount of $4.65.

35.     At no time prior to her purchase did Ms. Dunham view any sign or disclosure informing her that the 4% Surcharge would be added to her purchases.

36.     Accordingly, at no time prior to her purchase did Ms. Dunham realize that Sherwin-Williams would furtively affix a price increase on her transaction.

37.     It was not until Ms. Dunham examined her purchase receipt after she completed the transaction that she encountered a disclaimer located at the very bottom of the receipt that stated the following: "Please note, effective through 12-31-2021, a 4% Supply Chain Surcharge has been added to all applicable items purchased."

38.     Had Ms. Dunham known that the Surcharge would be assessed on her purchase, she would not have purchased her paint from Sherwin-Williams.

39.     Even if Ms. Dunham had viewed a disclosure prior to completing her purchase, she would have been unable to cancel her transaction because she purchased mixed paint, which customers are unable to return to Sherwin-Williams once the paint has been mixed, even before checkout.

7

40.     Plaintiff Frank Novak made a purchase at a Sherwin-Williams store located in Commerce Township, Michigan on January 15, 2022 in the total amount of $43.82.

41.     Mr. Novak purchased 1 gallon of paint and was assessed a 4% Surcharge for that gallon, in the total amount of $.98.

42.     Mr. Novak also purchased some caulk, painters tape, and a caulk gun and was assessed a 4% Surcharge for each item in the total amount of $.62.

43.     At no time prior to his purchase did Mr. Novak view any sign or disclosure informing him that the 4% Surcharge would be added to his purchases.

44.     Accordingly, at no time prior to his purchase did Mr. Novak realize that Sherwin-Williams would furtively affix a price increase on his transaction.

45.     It was not until Mr. Novak examined his purchase receipt after he completed the transaction that he encountered a disclaimer located at the very bottom of the receipt that stated the following: "Please note, effective through 1-31-2022, a 4% Supply Chain Surcharge has been added to all applicable items purchased."

46.     Had Mr. Novak known that the Surcharge would be assessed on his purchase, he would not have purchased his items from Sherwin-Williams.

47.     Even if Mr. Novak had viewed a disclosure prior to completing his purchase, he would have been unable to cancel his transaction because he purchased mixed paint, which customers are unable to return to Sherwin-Williams once the paint has been mixed, even before checkout.

## CLASS ALLEGATIONS

48.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of themselves and Classes of similarly situated persons defined as follows:

**New York Class:**
All persons in New York who, within the applicable statute of limitations preceding the filing of this action, made a purchase at a Sherwin-Williams store and was charged a 4% Surcharge.

**Michigan Class:**
All persons in Michigan who, within the applicable statute of limitations preceding the filing of this action, made a purchase at a Sherwin-Williams store and was charged a 4% Surcharge.

**Nationwide Class:**
All persons who, within the applicable statute of limitations, made a purchase at a Sherwin-Williams store and was charged a 4% Surcharge.

49.     Excluded from the Classes are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees, and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including, without limitation, the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

50.     **Numerosity**:  At this time, Plaintiffs do not know the exact size of the Classes; however, due to the nature of the trade and commerce involved, Plaintiffs believe that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

51.     **Commonality**:  There are questions of law or fact common to the Classes, including the following, without limitation:

a.    Whether during the class period, Defendant deceptively engaged in a bait-and-switch scheme with customers regarding its 4% Surcharge that it assessed on all purchases made in its Sherwin-Williams stores;

b.    Whether during the class period, Defendant made material omissions regarding its 4% Surcharge;

c.    Whether during the class period, Defendant failed to sufficiently inform reasonable customers of its 4% Surcharge;

d.    Whether Defendant's alleged misconduct misled or had the tendency to mislead customers;

e.    Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

f.    Whether Defendant's alleged conduct constitutes violations of the laws asserted;

g.    Whether Plaintiffs and the Classes were harmed by Defendant's misrepresentations and omissions;

h.    Whether Plaintiffs and the Classes have been damaged, and if so, the proper measure of damages; and

i.    Whether an injunction is necessary to prevent Defendant from continuing to deceptively assess the hidden 4% Surcharge on customers' purchases at its Sherwin-Williams stores and/or to order Defendant to sufficiently disclose to customers the 4% Surcharge prior to making their purchases.

52.    **Typicality**: Like Plaintiffs, many other customers made purchases at a Sherwin-Williams store without understanding that the 4% Surcharge would be added to their transactions.

Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs and each Class member was injured by Defendant's false representations and omissions about the 4% Surcharge. Plaintiffs and the Classes have suffered the same or similar injury as a result of Defendant's false, deceptive, and misleading representations. Plaintiffs' claims and the claims of the Classes emanate from the same legal theory, Plaintiffs' claims are typical of the claims of the Classes, and, therefore, class treatment is appropriate.

53.      **Adequacy of Representation**:  Plaintiffs are committed to pursuing this action and have retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiffs will fairly and adequately represent the interests of the Classes and do not have any interests adverse to those of the Classes.

54.      **The Proposed Classes Satisfy the Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive and equitable relief with respect to the Classes as a whole. Plaintiffs remain interested in making purchases at Sherwin-Williams stores in the future; there is no way for them to know when or if Defendant will cease deceptively misrepresenting the true cost of each purchase transaction through affixing the 4% Surcharge.

55.      Specifically, Defendant should be ordered to provide customers with sufficient disclosures about the 4% Surcharge *prior* to their decision to make purchases at Sherwin-Williams locations and not when it is too late for the customer to rescind their purchase.

56.      Defendant's ongoing and systematic practices make declaratory relief with respect to the Classes appropriate.

57.      **The Proposed Classes Satisfy the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual

members of the Classes, and a class action is the superior method for fair and efficient adjudication

of the controversy.  The likelihood that individual members of the Classes will prosecute separate

actions is remote due to the extensive time and considerable expense necessary to conduct such

litigation, especially when compared to the relatively modest amount of monetary, injunctive, and

equitable relief at issue for each individual Class member.

**FIRST CLAIM FOR RELIEF**
**Deceptive Acts Or Practices – N.Y. Gen. Bus. Law § 349**
**(Asserted on Behalf of the New York Class)**

58.     Plaintiffs repeat and re-allege the above allegations as if fully set forth herein.

59.     This cause of action is brought under New York's General Business Law § 349, *et*

*seq.*

60.     N.Y. Gen. Bus. Law § 349(a) provides that "[d]eceptive acts or practices in the

conduct of any business, trade or commerce or in the furnishing of any service in this state are

hereby declared unlawful."

61.     Sherwin-Williams committed deceptive acts and practices in violation of N.Y. Gen.

Bus. Law § 349 by deceptively failing to disclose to customers the existence of the 4% Surcharge

applied to all purchases made at Sherwin-Williams stores.

62.     Sherwin-Williams's actions regarding its Surcharge, as described herein, are

deceptive acts or practices in the conduct of business trade or commerce of goods.

63.     The deceptive acts or practices and the sale of goods took place in this State because

Sherwin-Williams operates in this State and because the purchase transaction took place in this

State when Ms. Dunham made her paint purchase at the Sherwin-Williams store. In short, the

underlying nature of the deceptive transactions occurred in New York.

64.     N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by

reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

65.     Plaintiff and the Class have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 349.

66.     Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of Sherwin-Williams's business.

67.     As an actual and proximate result of Defendant's misconduct, Ms. Dunham and the Class were injured and suffered damages.

68.     Defendant is liable to Ms. Dunham and the Class for damages in amounts to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**Violation of Michigan Consumer Protection Act, M.C.L. §§ 445.903, *et seq.***
**(Asserted on Behalf of the Michigan Class)**

69.     Plaintiffs repeat and re-allege the above allegations as if fully set forth herein.

70.     This cause of action is brought under Michigan's Consumer Protection Act, M.C.L., §§ 445.903, *et seq.*, (the "MCPA").

71.     Defendant's sale of goods to customers at its Sherwin-Williams stores were "transactions" within the meaning of the MCPA.

72.     Defendant violated and continues to violate the MCPA by engaging in the following practices proscribed by the MCPA in transactions with Mr. Novak and the Class that were intended to result in, and did result in, the sale of goods from Sherwin-Williams:

   a.   "Advertising or representing . . . goods with intent not to dispose of those . . . goods as advertised or represented" (1)(g); and

b.  "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer" (1)(s).

73.  Specifically, Sherwin-Williams deceptively misrepresents and fails to adequately disclose to customers that the 4% Surcharge will be assessed on each item purchased at Sherwin-Williams stores.

74.  Sherwin-Williams misrepresents the actual cost of the items offered for sale by failing to correct reasonable understandings of its price representations, thereby misrepresenting that the actual price of each item will be 4% higher than represented—and even more, considering that the 4% Surcharge is added to customers' bills above the line to which sales taxes are multiplied, further increasing the costs to customers.

75.  Mr. Novak reasonably relied on Defendant's misleading misrepresentations and omissions about the 4% Surcharge in choosing to make paint purchases at Sherwin-Williams.

76.  Had Mr. Novak known the truth about the Surcharge prior to making his purchase, he would not have purchased the paint from Sherwin-Williams.

77.  At no time does Sherwin-Williams adequately disclose the Surcharge to customers; instead, it conceals and misrepresents this material information at several steps of the transaction process until it is too late to rescind their purchase.

## THIRD CLAIM FOR RELIEF
### Breach of Contract
**(Asserted on behalf of the New York Class, the Michigan Class and the Nationwide Class)**

91.  Plaintiffs repeat and re-allege the above allegations as if fully set forth herein.

14

92.     Plaintiffs and Sherwin-Williams have contracted for the sale and purchase of consumer products such as paint, as embodied by Defendant's pricing representations made at each of its stores.

93.     No contract provision authorizes Defendant to be able to impose a hidden 4% Surcharge on its customers for all purchases made at its Sherwin-Williams stores.

94.     Defendant breached the terms of its contract with customers by charging an additional 4% more for each item purchased at its Sherwin-William stores, over and above the contracted for listed price of each item.

95.     Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

96.     Plaintiffs and members of the Classes have sustained damages as a result of Defendant's breach of the contract.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Asserted on behalf of the New York Class, the Michigan Class and the Nationwide Class)**

97.     Plaintiffs repeat and re-allege the above allegations as if fully set forth herein.

98.     This Count is brought solely in the alternative. Plaintiffs acknowledge that the breach of contract claim cannot be tried along with unjust enrichment.

99.     To the detriment of Plaintiffs and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

100.    Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

101.    Plaintiffs and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and the Classes seek judgment in an amount to be determined at trial, as follows:

(a)  For an order enjoining Defendant from continuing the unlawful practices set forth above;

(b)  For declaratory and injunctive relief as set forth above;

(c)  For an order requiring Defendant to disgorge and make restitution of all   monies it acquired by means of the unlawful practices set forth above;

(d)  For compensatory damages according to proof;

(e)  For punitive damages according to proof;

(f)  For reasonable attorneys' fees and costs of suit;

(g)  For pre-judgment interest; and

(h)  Awarding such other and further relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims so triable.

Dated: March 30, 2022                        **KALIELGOLD PLLC**

By*/s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel (Bar Roll No. 518372)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

Sophia Goren Gold (Bar Roll No. 701241)
KalielGold PLLC
950 Gilman Street, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783

sgold@kalielgold.com

**NEMATZADEH PLLC**
Justin S. Nematzadeh (*pro hac vice forthcoming*)
101 Avenue of the Americas, 9th Floor
New York, NY 10013
Telephone: (646) 799-6729
Email: jsn@nematlawyers.com

*Attorneys for Plaintiffs and the Proposed Class*