UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MAUREEN E. DUNHAM,

        Plaintiff,

        -v-                            1:22-CV-300

THE SHERWIN-WILLIAMS COMPANY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SHAMIS & GENTILE, P.A.<br>Attorneys for Plaintiff<br>14 N.E. 1st Avenue, Suite 705<br>Miami, FL 33132 | ANDREW J. SHAMIS, ESQ. |
| KALIEL GOLD PLLC<br>Attorneys for Plaintiff<br>1100 15th Street NW – 4th Floor<br>Washington, DC 20005 | JEFFREY D. KALIEL, ESQ. |
| NEMATZADEH PLLC<br>Attorneys for Plaintiff<br>101 Avenue of the Americas – Suite 909<br>New York, NY 10013 | JUSTIN S. NEMATZADEH, ESQ. |
| KALIEL GOLD PLLC<br>Attorneys for Plaintiff<br>950 Gilman Street – Suite 200<br>Berkeley, CA 94710 | SOPHIA GOREN GOLD, ESQ |

| | |
|---|---|
| JONES, DAY LAW FIRM<br>Attorneys for Defendant<br>250 Vesey Street<br>New York, NY 10281 | SHARYL A. REISMAN, ESQ. |
| JONES, DAY LAW FIRM<br>Attorneys for Defendant<br>North Point<br>901 Lakeside Avenue<br>Cleveland, OH 44114 | CALLAND FERRARO, ESQ.<br>LOUIS CHAITEN, ESQ. |

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

On March 30, 2022, named plaintiffs Maureen Dunham ("Dunham" or "plaintiff") and Frank Novak ("Novak"), brought this action on behalf of themselves and others similarly situated, alleging that defendant, The Sherwin-Williams Company ("Sherwin-Williams" or "defendant"), engaged in a deceptive bait-and-switch scheme of covertly tacking on a hidden 4% "Supply Chain Charge" to every sales transaction. Dkt. No. 1. The complaint asserted four claims: (1) deceptive acts or practices in violation of the New York General Business Law § 349; (2) violation of the Michigan Consumer Protection Act; (3) breach of contract; and (4) unjust enrichment. *Id.*

On May 31, 2022, Sherwin-Williams moved to dismiss the complaint under Rules 12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and lack of personal jurisdiction. Dkt. No. 12.

On June 21, 2022, in lieu of an opposition, Dunham filed a First Amended Complaint. Dkt. No. 21. The amended pleading removes Novak as a named plaintiff and no longer asserts a violation of the Michigan Consumer Protection Act. *Id.* Accordingly, plaintiff's operative complaint now asserts three claims: (1) deceptive acts or practices in violation of the New York

General Business Law § 349; (2) breach of contract; and (3) unjust enrichment.  *Id.*

On July 5, 2022, Sherwin-Williams moved under Rule 12(b)(6) to dismiss the First Amended Complaint.  Dkt. No. 22.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

On September 28, 2021, Sherwin-Williams' Chairman, President, and Chief Executive Officer, John G. Morikis, made a public statement to Sherwin-Williams investors that manufacturing costs were rising due to a limited availability of raw materials.  First Am. Compl. ¶ 14.  In response to the rise in costs, defendant began imposing a 4% "Supply Chain Charge" to all items purchased by customers.  *Id.* ¶ 16.

On November 9, 2021, Dunham, in reliance "upon price tags and displays provided in-store," purchased two gallons of paint for $119.59 at a Sherwin-Williams store located in Amsterdam, New York.  First Am. Compl. ¶¶ 37–38.  As part of this transaction, plaintiff was charged a 4% "Supply Chain Charge" for each gallon of paint, amounting to $4.65.  *Id.* ¶ 39.  According to plaintiff, she did not realize that Sherwin-Williams would affix a price increase on her transaction and was first made aware of the surcharge upon examining her purchase receipt.  *Id.* ¶¶ 41–42.  Plaintiff asserts that "[h]ad

[she] known that the surcharge would be assessed on her purchase, she would not have purchased her paint from Sherwin-Williams." *Id.* ¶ 43.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. DISCUSSION

Dunham's three-count amended complaint alleges: (1) deceptive acts or practices in violation of New York General Business Law § 349; (2) breach of contract; and (3) unjust enrichment. First Am. Compl. ¶¶ 54–74.

### A. New York General Business Law § 349

Dunham first asserts that Sherwin-Williams committed deceptive acts or practices in violation of New York General Business Law § 349 by "failing to disclose to customers the existence of the 4% Surcharge applied to all purchases made at Sherwin-Williams stores." First Am. Compl. ¶ 57.

New York General Business Law § 349 is a "consumer protection measure." *Dimond v. Darden Rests., Inc.*, 2014 WL 3377105, at *4 (S.D.N.Y. July 9, 2014). It prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GEN BUS. LAW § 349(a). The purpose of the statute is "to empower customers, especially the disadvantaged, and to even the playing field of their disputes with better funded and superiorly situated fraudulent businesses." *Mendez v. Bank of Am. Home Loans Servicing, LP,* 840 F. Supp. 2d 639, 657 (E.D.N.Y. 2012) (cleaned up). The statute's reach is broad "in order to 'provide [the] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague customers in [New York] State.'" *Dimond*, 2014 WL 3377105, at *4 (citation omitted).

"To establish a violation of Section 349, the plaintiff must prove the defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result." *Chery v. Conduent Educ. Servs., LLC*, 581 F. Supp. 3d 436, 449 (N.D.N.Y. 2022)

(citation omitted).  For purposes of this motion to dismiss, Dunham has plausibly alleged that Sherwin-Williams violated Section 349.

### 1. **Consumer-Oriented**

First, Dunham has adequately alleged that Sherwin-Williams' application of a 4% surcharge to all purchases made at its stores amounts to consumer-oriented conduct.

"Section 349 on its 'face appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad.'"  *Chery*, 581 F. Supp. 3d at 449 (citation omitted).  As such, the consumer-orientated element merely requires a plaintiff to demonstrate "that the [defendant's] acts or practices have a broad impact on consumers at large."  *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).  This threshold is met "where the misconduct 'potentially affects similarly situated consumers.'"  *Chery*, 581 F. Supp. 3d at 450 (citation omitted).

Dunham has made a plausible showing that Sherwin-Williams' conduct meets this threshold by alleging that defendant imposed a 4% surcharge to *all* items purchased by customers at *each* of their Sherwin-Williams stores across the country.  First Am. Compl. ¶ 16.  Accordingly, plaintiff has adequately alleged that defendant engaged in consumer-oriented conduct within the broad reach of Section 349.

### 2. Materially Misleading

Next, Dunham has plausibly alleged that Sherwin-Williams engaged in materially misleading conduct. According to plaintiff, defendant engaged in three acts of deception: "first, touting in-store prices that are false; second, misdescribing its in-store price inflation as a 'Supply Chain Charge'; and third, never reasonably disclosing the 'Supply Chain Charge' until after a purchase is complete . . . ." First Am. Compl. ¶ 8.

To determine whether conduct is materially misleading, courts apply an objective standard. *Dimond*, 2014 WL 3377105, at *4 (citation omitted). This standard asks whether the representation or omission is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) (citations omitted). A plaintiff alleging a deceptive act based on an omission, as Dunham does here, must allege that "the business alone possesses material information relevant to the consumer and fails to provide this information." *Oswego Laborers' Loc. 214 Pension Fund*, 85 N.Y.2d at 26.

First, Dunham has adequately alleged that Sherwin-Williams omitted "material information" within the reach of Section 349. Material information is information that is "important to consumers and likely to affect their choice of product." *Braynina v. TJX Companies, Inc.*, 2016 WL 5374134, at *5 (S.D.N.Y. Sept. 26, 2016). "An omission is materially misleading, for

- 8 -

example, where the plaintiff would have acted differently had the defendant disclosed the information in its possession." *Id.* (citations omitted).

As relevant here, courts have held that the existence of a surcharge is information a consumer would reasonably consider important in determining where to shop. *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) (noting that defendant's addition of an undisclosed fee was material information to a consumer seeking the lowest price). Moreover, a consumer may not necessarily expect that a store such as Sherwin-Williams will impose a surcharge in addition to advertised prices. *See id.* In fact, plaintiff references numerous complaints from defendant's customers who were surprised by the surcharge. First Am. Compl. ¶¶ 30–36. Thus, it is plausible that a consumer with knowledge of defendant's "Supply Chain Charge" may choose to do business elsewhere. *See Chiste*, 756 F. Supp. 2d at 406. Indeed, plaintiff contends that had she known that the surcharge would be imposed on her purchase, she would not have purchased her paint from defendant. First Am. Compl. ¶ 43. Thus, plaintiff has sufficiently alleged that the existence of a surcharge amounts to "material information."

Second, Dunham has adequately alleged that Sherwin-Williams failed to provide this material information. Under this requirement, a plaintiff must demonstrate that "the information omitted was solely within the defendant's 'possession or that a consumer could not reasonably obtain such

information.'" *Id.* (citation omitted). "There can be no claim for deceptive acts or practices . . . when the alleged deceptive practice [is] fully disclosed." *Watts v. Jackson Hewitt Tax Serv. Inc.,* 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008).

As relevant here, Dunham asserts that Sherwin-Williams did not disclose the 4% surcharge prior to her purchase. First Am. Compl. ¶¶ 39–40. In contrast, defendant maintains that it fully disclosed the surcharge via a sign at the register and "in the price [it] asked [p]laintiff to pay before she consummated the transaction." Def.'s Mem., Dkt. No. 22-1 at 12.[1]

In support of its argument that the surcharge was disclosed in a sign at the register, Sherwin-Williams has attached: (1) a letter from Dunham to defendant, through counsel, in which plaintiff informs defendant of her plans to commence litigation; and (2) a letter response from defendant to plaintiff in which defendant attaches two emails from its marketing director to all U.S. stores – the first one instructing the stores to install signs to inform customers that a surcharge will be added to purchases, and the second, a few months later, informing the stores to remove the signs. *See* Ex. A to Def.'s Mem., Dkt. No. 22-3; Ex. B to Def.'s Mem., Dkt. No. 22-4.

---

[1] Pagination corresponds to CM/ECF.

Importantly, however, "[o]n a motion to dismiss, a court must generally 'limit itself to the facts stated in the complaint.'" *Lamda Sols. Corp. v. HSBC Bank USA*, N.A., 574 F. Supp. 3d 205, 211 (S.D.N.Y. 2021) (citations omitted). Despite this general rule, Sherwin-Williams offers several unpersuasive arguments as to why these documents should be considered at this stage of the proceedings. Nonetheless, even if consideration of these documents was appropriate at this time, they do not support defendant's argument that the surcharge was fully disclosed as a matter of law. Indeed, the only document potentially indicating that these signs were in place is the email directing stores to install the signs. *See* Ex. B to Def.'s Mem. at 5. However, this email is merely an instruction. It does not conclusively establish that the signs were in place at the Amsterdam store, or any store.

Sherwin-Williams' argument that it fully disclosed the surcharge in the total price displayed at the register is also without merit. Notably, whether the Amsterdam store gave Dunham a total purchase price prior to the consummation of the transaction is uncertain at this stage of the proceedings. Accordingly, it would be improper to conclude that defendant disclosed the surcharge in this manner. In sum, for purposes of this motion to dismiss, plaintiff has adequately alleged that defendant engaged in materially misleading conduct by failing to disclose the existence of the surcharge.

### 3. Injury

Lastly, Dunham has sufficiently alleged that she suffered an injury stemming from Sherwin-Williams' deceptive conduct. Plaintiff asserts that she was injured by "Sherwin-Williams' misleading price representations" and had she "known that the Surcharge would be assessed on her purchase, she would not have purchased her paint from Sherwin-Williams." Pl.'s Opp'n, Dkt. No. 23 at 16; First Am. Compl. ¶ 43.

"In order to satisfy the actual injury prong, a plaintiff must 'allege that, on account of a materially misleading practice, [they] purchased a product and did not receive the full value of [their] purchase.'" *Cruz v. D.F. Stauffer Biscuit Co.*, 2021 WL 5119395, at *4 (S.D.N.Y. Nov. 4, 2021) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015)). "The resulting injury must be 'actual, although not necessarily pecuniary, harm.'" *Braynina*, 2016 WL 5374134, at *9 (quoting *Oswego Laborers' Loc. 214 Pension Fund*, 85 N.Y.2d at 26)). Notably, "[t]he deceptive conduct cannot be pled 'as both act and injury.'" *Id.* (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999)).

Sherwin-Williams contends that Dunham has failed to plead a cognizable injury because "New York's highest court has held that 'consumers who buy a product that they would not have purchased, absent a [defendant's] deceptive commercial practices,' have not 'suffered an injury under General Business

Law § 349.'" Def.'s Mem. at 16 (quoting *Small*, 94 N.Y.2d at 56).  According to defendant, "[s]uch a theory . . . improperly 'sets forth deception as both act and injury.'" *Id.* (quoting *Small*, 94 N.Y.2d at 56).

Granted, "[i]t is settled that a plaintiff cannot establish a Section 349 claim by claiming that [they] would not have purchased a product absent the deceptive practice." *Tomassini v. FCA US LLC*, 2016 WL 11707888, at *7 (N.D.N.Y. Nov. 23, 2016) (collecting cases).  However, "allegations that a plaintiff purchased a product at an inflated price as a result of the defendant's deception is a sustainable injury under Section 349." *Id.* (citation omitted); *see also Braynina*, 2016 WL 5374134, at *10 (noting that injury under Section 349 may be in the form of overpayment whereby a plaintiff pays more than she would have but for the deceptive practice).

Dunham maintains that she was overcharged due to Sherwin-Williams' imposition of a "Supply Chain Charge." First Am. Compl. ¶¶ 5–8.  Thus, plaintiff is not merely asserting that she was injured because she would not have purchased a product absent defendant's deceptive conduct.  Rather, plaintiff is also alleging that defendant raised its prices under the guise of a surcharge, thereby causing her to pay more for defendant's products than she should have.  *Id.*  As such, plaintiff has made a plausible showing that she

suffered an economic injury as a result of defendant's deceptive conduct.[2]  *See Watts*, 579 F. Supp. 2d at 349 (concluding that plaintiffs sufficiently alleged an actual injury under Section 349 by making a plausible showing that they were overcharged due to defendant's alleged deceptive practices); *Ghee v. Apple-Metro, Inc.*, 2018 WL 575326, at *4 (S.D.N.Y. Jan. 26, 2018) (same); *Relativity Travel, Ltd. v. JP Morgan Chase Bank,* 2006 WL 2918081, at *3 (Sup. Ct. N.Y. Cnty. 2006) (same).

Nevertheless, Sherwin-Williams maintains that even if Dunham has properly alleged a cognizable injury, her allegation that the name "Supply Chain Charge" is deceptive still fails.  Def.'s Mem. at 17.  In support of this proposition, defendant asserts that "[p]laintiff has not alleged the 'essential' element of causation" because she never even saw the name of the surcharge prior to her purchase.  *Id.*  However, most recent cases have concluded that reliance and exposure are not critical to establishing causation.  *Fishon v. Peloton Interactive, Inc.*, 2022 WL 3284670, at *13 (S.D.N.Y. Aug. 11, 2022)

---

[2] Sherwin-Williams maintains that Dunham has "failed to plead a cognizable injury" because "her receipt shows that she paid less than the normal list price she expected to pay."  Def.'s Mem. at 17.  In support of this proposition, defendant attaches plaintiff's receipt as an exhibit to its Memorandum of Law.  Importantly, however, "[o]n a motion to dismiss, a court must generally 'limit itself to the facts stated in the complaint.'"  *Lamda Sols. Corp.*, 574 F. Supp. 3d at 211 (citations omitted).  Even if it were appropriate to review plaintiff's receipt at this time, it does not support defendant's assertion that plaintiff has failed to plead a cognizable injury.  In fact, if plaintiff was not subject to the "Supply Chain Charge," she would have spent even less money at defendant's store.  Thus, the fact that plaintiff paid less for her products than their listed prices does not demonstrate that she has not suffered an injury.

(collecting cases). In fact, "[t]he operative question is whether a plaintiff suffered an injury because of a defendant's misrepresentation; it is not whether that injury was tied to plaintiff's reliance on the misrepresentation." *Id.* at *15. Accordingly, defendant's argument is without merit. In sum, plaintiff has sufficiently alleged that defendant engaged in deceptive acts or practices in violation of Section 349.[3]

## B. <u>Breach of Contract</u>

Next, Dunham asserts that Sherwin-Williams breached its contract with customers by "charging an additional 4% more for each item" "over and above the contracted listed price of each item." First Am. Compl. ¶ 67.

"To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (citation omitted).

Dunham has adequately alleged all four requirements. First, plaintiff asserts that she "contracted [with defendant] for the sale and purchase of

---

[3] Sherwin-Williams asserts that Dunham has not plead the requirements for injunctive relief because she has failed to allege that she is likely to be harmed again in the future in a similar way. Defendant appears to be correct. *See, e.g.*, *Sharpe v. A&W Concentrate Company*, 481 F. Supp. 3d 94, 101 (E.D.N.Y. 2020) (holding that plaintiffs lacked standing to seek injunctive relief under Section 349 where they "adduce[d] no evidence that they are likely to repurchase the product, and indeed allege[d] that they would not have purchased the product in the first place had they known of its alleged defects"). Nevertheless, dismissing plaintiff's request for injunctive relief at this stage of the proceedings is unnecessary.

consumer products such as paint, as embodied by [d]efendant's pricing representations made at each of its stores." First Am. Compl. ¶ 66. Second, plaintiff alleges that "[she] and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract." *Id.* ¶ 68. Third, plaintiff maintains that defendant breached the terms of their agreement "by charging an additional 4% more for each item purchased at its Sherwin-Williams stores." *Id.* ¶ 67. Lastly, plaintiff alleges that "[she] and members of the Classes have sustained damages as a result of [d]efendant's breach of the contract. *Id.* ¶ 69.

Nevertheless, Sherwin-Williams asserts that Dunham has failed to allege a breach of contract because "the contracts' terms *included* the 4% surcharge, so the surcharge could not have breached the contracts." Def.'s Mem. at 18. In support of this argument, defendant cites case law for the general proposition that advertisements are not offers – they are merely invitations to enter negotiations. *Id.* Thus, according to defendant, "the parties' contract here was formed only after Sherwin-Williams asked [p]laintiff to pay the total price (inclusive of the 4% surcharge) and [p]laintiff paid for it." *Id.* In opposition, plaintiff maintains that when the contract was made is of little relevance because "[a]t every point in the purchase process, Sherwin-Williams promised to sell paint for a certain price, and Sherwin-Williams breached that promise." Pl.'s Opp'n at 25.

As evidenced by these arguments, the parties have competing views on whether the terms of the contract are inclusive of defendant's "Supply Chain Charge." As such, it is impossible to make a definitive conclusion as to whether the contract allowed defendant to impose a "Supply Chain Charge" in addition to its advertised prices. Thus, because defendant's argument cannot be resolved at this time, it must be rejected, and plaintiff's breach of contract claim shall proceed.[4]

### C. <u>Unjust Enrichment</u>

Lastly, Dunham asserts that Sherwin-Williams "has been, and continues to be, unjustly enriched" "[t]o the detriment of [p]laintiff and the Classes." First Am. Compl. ¶ 72.

"Under New York law, a plaintiff seeking damages for a claim of unjust enrichment must establish three elements: '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 682 (S.D.N.Y. 2015) (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 586 (2d Cir.2006)). Importantly,

---

[4] Sherwin-Williams also asserts that even if the parties did contract for the shelf price of its products, it did not breach the contract because it charged Dunham less than the listed price of its products. Def.'s Mem. at 19. In support of this proposition, defendant alludes to the receipt it attached to its Memorandum of Law, which shows a discount applied to plaintiff's transaction. *Id.* Importantly, however, plaintiff's amended complaint does not reference this discount, and "[o]n a motion to dismiss, a court must generally 'limit itself to the facts stated in the complaint.'" *Lamda Sols. Corp.*, 574 F. Supp. 3d at 211 (citations omitted).

however, "[u]njust enrichment is a quasi-contractual theory of recovery that exists in the absence of an affirmative agreement." *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 419–20 (N.D.N.Y. 2020) (citing *Beth Israel Med. Ctr.*, 448 F.3d 586–87)). Thus, "an unjust enrichment claim is 'not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Id.* (citation omitted).

As relevant here, Sherwin-Williams maintains that Dunham's unjust enrichment claim must be dismissed because "all parties agree that a contract exists between [p]laintiff and Sherwin-Williams." Def.'s Mem. at 19. In response, plaintiff maintains that she is permitted to plead an unjust enrichment claim in the alternative. Pl.'s Opp'n at 26.

Granted, "Federal Rule of Civil Procedure 8(d) permits plaintiffs to plead alternative and inconsistent claims . . . ." *In re Generali COVID-19 Travel Ins. Litig.*, 576 F. Supp. 3d 36, 50 (S.D.N.Y. 2021) (citation omitted). However, "courts dismiss unjust enrichment claims pleaded in the alternative where there is no dispute as to the validity of the agreement." *Id.* (citation omitted). Thus, because there is no dispute as to the validity of the agreement, there is no viable claim for unjust enrichment. As a result, plaintiff's unjust enrichment claim will be dismissed.

## V. **CONCLUSION**

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2. Defendant's motion to dismiss plaintiff's unjust enrichment claim is GRANTED;

3. Defendant's motion to dismiss plaintiff's New York General Business Law § 349 claim and breach of contract claim is DENIED;

3. Defendant shall file an answer to the remaining claims on or before November 14, 2022.

4. The Clerk of the Court is directed to terminate the pending motions.

IT IS SO ORDERED.

Dated: October 24, 2022
       Utica, New York.

David N. Hurd
U.S. District Judge